**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

SOUTHEASTERN METALS
MANUFACTURING COMPANY, INC.,

    Plaintiff,
vs.                                                                   CASE NO. 3:09-cv-1250-J-25TEM

FLORIDA METAL PRODUCTS, INC.,

    Defendant.
_____/

**O R D E R**

This matter comes before the Court on Defendant's Motion to Exclude the Testimony and Strike the Report of Plaintiff's Damages Expert, Dennis M. Giuffré (Doc. #70, Motion) and Plaintiff's response in opposition thereto (Doc. #77). For the reasons stated herein, Defendant's Motion shall be **DENIED**.

On December 18, 2009, Plaintiff Southeastern Metals Manufacturing Company, Inc. filed a complaint against Defendant Florida Metal Products, Inc., alleging Defendant infringed upon its patent for the "Off-Ridge Roof Vent" (Doc. #1 at 2). As part of its claim for damages, Plaintiff maintains it has suffered lost profits (*see* Doc. #1 at 3-4; *see also* Doc. #S-1). In support of this assertion, Plaintiff has disclosed the expert report of economist and engineer, Dennis M. Giuffré (Doc. #S-1).[1]

Defendant does not challenge the Expert's credentials; however, it argues that Plaintiff's Expert makes speculative assumptions in the report related to: (1) the

---

[1] Hereinafter, Plaintiff's expert witness, Dennis M. Giuffré, will be referred to as "Plaintiff's Expert" or "the Expert."

1

composition of the market for Plaintiff's product; and (2) Plaintiff's ability to meet demand if Defendant's alleged infringing product were not in the marketplace (Doc. #70 at 4-6). Defendant maintains the aforementioned assumptions are not helpful and will confuse or mislead the trier of fact (Doc. #70 at 8). Consequently, Defendant asserts the Expert's report should be deemed inadmissible and, therefore, be stricken from the record (Doc. #70 at 8-9).

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. This Circuit recognizes that expert testimony is admissible under Rule 702 where: (1) the expert is qualified to testify competently regarding the matters he or she intends to address; (2) the methodology by which the expert reaches his or her conclusions is sufficiently reliable under the inquiry mandated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); and (3) the testimony assists the trier of fact (through the application of scientific, technical, or specialized expertise) to understand the evidence or to determine a fact in issue. *Guinn v. AstraZeneca Pharmaceuticals, L.P.*, 602 F.3d 1245 (11th Cir. 2010).

Additionally, in accordance with *Daubert*, this Court must act as a "gatekeeper" to ensure that expert testimony is both relevant and reliable. In making this determination, the Court may apply the factors outlined in *Daubert*, which are: (1) whether the theory or technique at issue can be tested; (2) whether the technique or theory has been subject to peer review or testing; (3) whether the known or potential rate of error is acceptable; and (4) whether the technique or theory is generally accepted by experts in the relevant field of study. *Daubert*, 509 U.S. at 593-94; *see also Allison v. McGhan Med. Corp.*, 184 F.3d 1200, 1309-10 (11th Cir. 1999). This list of factors, however, "do[es] not exhaust the

universe of considerations that may bear on reliability." *Id.; see also Kumho Tire Co.,* 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test'") (*emphasis in original*; *internal citation omitted*); *Daubert,* 509 U.S. at 594 (noting that the Rule 702 inquiry is "a flexible one"). District courts have substantial discretion in deciding how to test an expert's reliability. *United States v. Majors,* 196 F.3d 1206, 1215 (11th Cir.1999) (*internal citation omitted*).

In applying the gatekeeping function, courts must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Experts, however, are entitled to state reasonable assumptions. *Maiz v. Virani*, 253 F.3d 641, 667 (11th Cir. 2001). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but [nevertheless] admissible evidence." *Daubert*, 509 U.S. at 596. While an expert's testimony may be inadmissible if it lacks a logical basis, the trial judge retains the discretion to determine whether a logical basis has been established. Any weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility. *Jones v. Otis Elevator Co.*, 861 F.2d 655, 663-64 (11th Cir. 1988).

Defendant argues Plaintiff's Expert erroneously assumes a two-supplier market, as there are at least three additional competitors to Plaintiff's product (Doc. #70 at 4). With regard to the relevant market for a plaintiff's product, the Federal Circuit has held that in patent cases, the market consists only of "acceptable, non-infringing substitutes." *Smith Klein Diagnostics, Inc. v. Helena Labs Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991). Generally, purchasers are inclined to purchase products because of features exclusive to

the patent owner and the alleged infringers; therefore, products without such features would typically not be considered acceptable, non-infringing substitutes. *Id. see also TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895 (Fed. Cir. 1986).

Here, Plaintiff recognizes the existence of other competitors in the marketplace for Plaintiff's patented product, but claims such products infringe upon Plaintiff's patent; thus, there are no non-infringing, substitute products (Doc. #77 at 5). Despite design similarities with other products, Plaintiff's Expert arrived at a two-supplier market by examining the similarities between Plaintiff's and Defendant's product, and concluding demand in the marketplace was based on features that are shared exclusively between the two products (Doc. #77 at 5). The undersigned recognizes that Plaintiff and Defendant are not in agreement as to whether other competitors have been approved for use in High Velocity Hurricane Zones by Miami-Dade County (*see* Doc. #70 at 5); however, such a factual dispute is better resolved through vigorous cross examination and presentment of contrary evidence at trial. The Eleventh Circuit has made clear that a *Daubert* motion is not intended to supplement the adversary system. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (affirming the district court's ruling which allowed the defendant's expert's testimony where plaintiff alleged there were flaws in the methodology and reasoning). Thus, to the extent Defendant challenges the two-supplier market conclusion, any weaknesses in the expert's opinion in this regard would go to its weight rather than its admissibility. *Jones*, 861 F.2d at 663-64.

Defendant further contends the Expert's analysis of Plaintiff's ability meet market demand is unsupported speculation (Doc. #70 at 4). Defendant supports this argument by citing the unpublished opinion of *Martinez v. Rabbit Tanaka Corp., Ltd.*, No. 04-61504-CIV,

2006 WL 5100536 (S.D. Fla. Jan 6, 2006).[2] In *Martinez*, the court excluded a plaintiff's lost profits expert because his reports were based upon unsupported facts and a wide variety of assumptions. *Id.* at *13. The court stated the expert's opinion amounted to "nothing more than his own *ipse dixit* [or unsupported conclusions]" as he "simply assumed" the viability of the plaintiff's products and based none of his conclusions on testable data or research. *Id.* at *13-14. The following is an excerpt from the expert report presented in *Martinez*:

> [a]ccording to the 'partnership *pro forma*' it was going to take roughly $20 to manufacture this product [novelty holographic lamps]. Allowing for the seller/advertiser to make $10 each, and selling them for $40(r) each unit could produce a $10 overall profit. Jiggle the price a little and reduce production costs as time goes by and this is more than feasible. If 50,000 Elvis lamps were sold that would generate a $500,000 profit. That's on the first order. A likely re-order would generated $10/ea again, but let's stick with the conservative 50,000 for $500,000. If you could sell another 50,000 to, let's say Budweiser, that's another $500,000. And remember, they aren't the only game in town. Beer is a highly competitive market. As to Playboy the price is a little higher because the lamp requires replacements on a regular interval. Let's say 50,000 original order, but with the annuity built in, $20 a piece is more reasonable or $1,000,000. And, remember, the adult market is also competitive and Playboy isn't the only game in town either. Total up just the three abovementioned outlets and the loss is a conservative **TWO MILLION DOLLARS.**

*Id.* at *11 (*emphasis in original*).

Contrary to Defendant's allegations, the undersigned finds Plaintiff's Expert's opinion and analysis is based upon more than mere assumptions like those noted in *Martinez*, *supra*. To illustrate, the Expert's opinion is based on an economic analysis of both Plaintiff's and Defendant's financial records (Doc. #S-1). His analysis shows, through

---

[2]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

Plaintiff's sales data of the subject patented product, that Plaintiff was capable of meeting demand in 2006, a year in which Defendant's alleged infringing product had not yet been sold (Doc. #S-1). In each of the following years, the combined sales of Plaintiff's and Defendant's products were roughly equivalent to Plaintiff's sales totals in 2006 (Doc. #S-1). Consequently, it is reasonable for the Expert to assume that Plaintiff would have been able to meet the demand for its product from 2007 to the present. Unlike the "expert" in *Martinez*, Mr. Giuffré's opinion(s) do not appear to be based on "unsupported and unverified assumptions," nor do they appear to be contrived to reach a particular result (Doc. #70 at 7-8). To the extent that Defendant argues the Expert's opinion(s) are unfounded, this contention would go to the weight of the evidence, rather than to its admissibility. *Jones*, 861 F.2d at 663-64.

In addition, Defendant argues Plaintiff's Expert's report is based on factual assumptions that would tend to confuse or mislead the trier of fact (Doc. #70 at 8); *see also Guinn v. AstraZeneca Pharmaceuticals LP*, 602 F.3d 1245. In support of this argument, Defendant states the Expert's testimony is inadmissible "for the same reasons that [the] report and testimony are unreliable" (Doc. #70 at 8). As previously discussed, Plaintiff's Expert has supported his report with sufficient research and data to indicate both reliability and relevance. Due to the foregoing, the undersigned finds Plaintiff's Expert's report and any attendant testimony would assist the trier of fact.

Thus, upon due consideration, Defendant's Motion to Exclude the Testimony, and Strike the Report, of Plaintiff's Damages Expert, Dennis M. Giuffré (Doc. #70), is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida this 21st day of April, 2011.

Copies to all counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge